**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| H-Food Holdings, LLC, *et al.*,[1] | Case No. 24-90586 (ARP) |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SETTLEMENT AGREEMENT BY AND AMONG THE OFFICE OF THE ILLINOIS ATTORNEY GENERAL, ILLINOIS DEPARTMENT OF LABOR, AND HEARTHSIDE FOOD SOLUTIONS, LLC AND (II) GRANTING RELATED RELIEF**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

H-Food Holdings, LLC and its affiliated debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by and through their undersigned proposed counsel, respectfully state as follows in support of this motion (the "Motion"):[2]

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: HFS Sub, LLC (8177); H-Food Holdings, LLC (6072); Hearthside Food Solutions, LLC (8653); Peacock Engineering Company II, LLC (N/A); HFS Matterhorn Topco, Inc. (0765); Matterhorn Parent, LLC (4445); Matterhorn Intermediate, LLC (1574); Matterhorn Buyer, LLC (0335); Hearthside USA - Corporate, Inc. (3174); Hearthside Holdco, LLC (6206); Hearthside Finance Company, Inc. (8294); Interbake Foods, LLC (7640); Ryt-way Midco, LLC (4388); Hearthside USA, LLC (7655); Hearthside USA – CPG Partners, LLC (2282); Oak State Products, LLC (1822); Standard Functional Foods Group, LLC (4160); Quality Bakery Products, LLC (0528); Toll Packaging Services LLC (5955); Ryt-way Industries, LLC (0783); Matterhorn Sub, LLC (N/A); Peacock Foods LLC (N/A); and Hearthside USA – Produce & Foodservice, LLC (0783). The Debtors' service address is 3333 Finley Road, Suite 800, Downers Grove, IL 60515.

[2] Capitalized terms used herein but not otherwise defined shall have meanings ascribed to them in the First Day Declaration (defined below).

## RELIEF REQUESTED

1. The Debtors seek entry of an order (the "Proposed Order"), substantially in the form attached hereto, (a) approving and authorizing Hearthside Food Solutions, LLC ("HFS") to enter into and perform under a settlement with the Office of the Illinois Attorney General ("ILAG"), and Illinois Department of Labor ("IL DOL", together with ILAG and HFS, the "Parties"), with respect to certain investigations related to Illinois labor law ("Labor Law"), on the terms and conditions set forth in the *Assurance of Voluntary Compliance* attached to the Proposed Order as **Exhibit A** (the "Settlement Agreement"), and (b) granting related relief.

## JURISDICTION

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b).

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

4. The bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas.

## BACKGROUND

### I. The Chapter 11 Cases

5. On November 22, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their property and continue to operate and manage their businesses as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b), Bankruptcy Local Rule 1015-1, and the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 12]. No request has been made for the appointment of a trustee or examiner. The Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an official committee of unsecured creditors on December 4, 2024 [Docket Nos. 134 and 140].

6. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases, is set forth in the *Declaration of Robert M. Caruso, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 30] (the "First Day Declaration").

## II. Factual Background of the Settlement Agreement

7. On February 25, 2023, *The New York Times* published an article raising certain labor issues, which the Debtors maintain were principally connected to third-party staffing agencies. Following this publication, the Debtors became aware of investigations being undertaken with respect to such alleged labor issues, and particularly with respect to such third-party staffing agencies, by the ILAG and the IL DOL (the "Investigation").[3] From the beginning, the Debtors have consistently and firmly disputed any allegations of wrongdoing regarding Illinois Labor Law violations with respect to their workforce and labor practices. That notwithstanding, the Debtors have fully cooperated and actively engaged with the ILAG and IL

[3] For reference, the Debtors operate nine (9) production facilities located in the State of Illinois.

DOL in their investigation.

8. The Debtors have also consistently sought a consensual resolution of the Investigation through settlement and although discussions were substantively productive prepetition, the Parties were unable to finalize negotiations prior to the filing of these chapter 11 cases. The Debtors are mindful that the continued costs of this process are substantial and, by curtailing this process, the Debtors can reduce the overall administrative costs of these chapter 11 cases. The Parties, understanding the benefits of a settlement, continued to work rigorously after the Petition Date and were able to successfully memorialize the final terms in the Settlement Agreement.

9. On December 4, 2024, the Parties reached an agreement on the following material terms:[4]

a. Settlement payment by the Debtors to the ILAG and IL DOL of $4,500,000;

b. No admission or finding as to liability, wrongdoing, or any violation of Illinois Labor Law as specifically identified in the Settlement Agreement; and

c. Release and discharge of HFS and its current and former equity holders, parents, subsidiaries, successors, and affiliates and their officers, members of any governing body, employees and agents from all claims with respect to alleged Illinois Labor Law violations specifically identified in the Settlement Agreement beginning in March 2020 through and including the date upon which the Parties reached agreement.

Upon Court approval, the Settlement Agreement will provide a complete resolution of the Investigation and ensure the reorganized Debtors will benefit from a "new start." For all the reasons discussed herein, the Debtors believe the Settlement Agreement is vital; accordingly, the

[4] The summary set forth herein is qualified in its entirety by the terms of the Settlement Agreement, and the terms of the Settlement Agreement shall control in the event of a conflict.

Debtors seek approval of the Settlement Agreement and authority to enter into the Settlement Agreement and implement its terms.

## BASIS FOR RELIEF REQUESTED

### I. Settlements Facilitate the Reorganization Process and Should Be Approved Where They Exceed the "Lowest Point in the Range of Reasonableness"

10. Bankruptcy Rule 9019 grants the Court authority to approve the settlement of claims and controversies after notice and a hearing. Specifically, Bankruptcy Rule 9019(a) provides the following:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee . . . and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

11. Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See Official Comm. of Unsecured Creditors* v. *Moeller (In re Age Refin., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015).

12. "To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980).

13. In the Fifth Circuit, bankruptcy courts consider the following factors in determining whether to approve a proposed settlement:

- the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law;

- the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and
- all other factors bearing on the wisdom of the compromise, including (i) the best interests of creditors and (ii) the extent to which the settlement is the product of arms-length bargaining.

*See Age Refin. Inc.*, 801 F.3d at 540; *see also Conn. Gen. Life Ins. Co.* v. *United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917–18 (5th Cir. 1995). Ultimately, approval of a compromise is within the "sound discretion" of the bankruptcy court. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984). In this regard, "[t]he settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991) (internal quotations omitted); *see In re Mirant Corp.*, 348 B.R. 725, 743 (Bankr. N.D. Tex. 2006) (same).

14. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414, 424 (1968).

15. Further, the Bankruptcy Code authorizes the use and disposition of property outside the ordinary course of business with court approval and a valid business reason after notice and a hearing. 11 U.S.C. § 363(b)(1). It is well established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business with a valid business reason. *See, e.g., ASARCO, Inc.* v. *Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780

F.2d 1223, 1226 (5th Cir. 1986)); *Richmond Leasing Co.* v. *Capital Bank, N.A.*, 762 F.2d 1303, 1308 (5th Cir. 1985) (holding that the standard to assume a lease is the business judgment standard).

16. In this analysis, "[g]reat judicial deference is given to the [debtor's] exercise of business judgment." *GBL Holding Co.* v. *Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Grp., Ltd.)* 331 B.R. 251, 254 (N.D. Tex. 2005). "As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." *Richmond Leasing Co.*, 762 F.2d at 1309.

17. The Debtors respectfully submit that the Settlement Agreement represents a fair and reasonable compromise of the subject matter driving the Investigation and will deliver significant value to the Debtors and their estates, which will inure to the benefit of the stakeholders. As set forth in the First Day Declaration, the overhang of matters related to the Investigation had a significant impact on the Debtors' operations prior to the Petition Date and this resolution will, in the Debtors' business judgment, eliminate that uncertainty. Additionally, the subject matter of the Investigation is highly fact-intensive and, as noted above, has required the Debtors to dedicate substantial resources in this regard; the Settlement Agreement will permit the Debtors to eliminate these substantial costs. If the Settlement Agreement is not approved, the Debtors will be required to litigate the underlying merits of the Investigation's subject matter. And, while the Debtors vigorously dispute any underlying factual allegations, there can be no dispute that the costs of defense in this regard could be significant and, perhaps more importantly, will meaningfully and negatively distract the Debtors' leadership as they seek to drive these chapter 11 cases to a swift conclusion.

## II. The Settlement Agreement Satisfies the Fifth Circuit's Three-Factor Test and Should Be Approved

18. The Debtors respectfully submit that the Settlement Agreement is fair, reasonable, and in the best interests of the Debtors' estates, and accordingly meets the standards for approval of a compromise and settlement pursuant to Bankruptcy Rule 9019.

### A. Litigating Parties' Respective Positions Would Be Complex, Costly, and Uncertain

19. Litigation between the ILAG and IL DOL, on the one hand, and the Debtors, on the other hand, would be costly and time-consuming. Since the Debtors first became aware of the Investigation, HFS sought to cooperate with the relevant parties and expended significant resources to do so. At the same time, HFS has firmly and consistently disputed any allegations in connection with the Investigation. Absent a resolution, the Parties' conflicting positions would lead to litigation in this Court and, more likely than not, in the appellate courts. And, in this regard, HFS acknowledges that such litigation would, if nothing else, impose substantial costs at a time when the Debtors seek to stabilize their transition into chapter 11 and, in turn, complete these prearranged chapter 11 cases as quickly as reasonably possible. Absent entry into and approval of the Settlement Agreement, the Debtors will be forced to continue to dedicate their finite resources to defense and litigation.

20. Furthermore, determining the nature and extent of HFS' liability regarding the alleged violation of Illinois Labor Law is a complex issue as a matter of fact and law. Discerning the extent of the alleged violations as well as the relevant penalties and damages would be difficult to determine and uncertain. Instead, the Settlement Agreement provides a consensual resolution to what would certainly be lengthy, uncertain, and protracted litigation, enabling the Debtors to focus on uninterrupted service to their customers.

### B. The Settlement Agreement Is in the Best Interests of Creditors

21. The Settlement Agreement is in the best interest of the creditors because it maximizes creditors' recoveries and allows a clearer, more efficient path towards the Debtors' ultimate reorganization. The Settlement Agreement allows the Debtors to focus their time and resources on operations rather than expensive and protracted litigation, ensuring such resources remain in the Debtors' estate to the benefit of stakeholders. The Settlement Agreement also provides the Debtors with a release that is valuable to all parties since there will no longer be a cloud of potential ILAG or IL DOL litigation hanging over the Debtors. This assurance of a "fresh start" benefits the current Debtors, and undoubtedly the reorganized Debtors emerging from bankruptcy, to position their business for success as a go-forward enterprise for the benefit of all creditors. Indeed, the Required Consenting First Lien Lenders (as defined in the RSA) have indicated their consent and approval of the Settlement Agreement.

22. Furthermore, the Settlement Agreement is a product of arms-length bargaining between the Parties. In this regard, the Debtors were advised by experienced, specialist counsel in vigorous negotiations over an extended period of time. The Parties exchanged multiple iterations of the settlement terms which reflected substantial "back and forth" on key items. This process was also undertaken with the benefit of disinterested oversight from the Debtors' independent special committee.

23. Accordingly, the Debtors respectfully submit that their entry into the Settlement Agreement falls well above the "lowest end of the range of reasonableness." Rather, the Settlement Agreement avoids complex, protracted and costly prospective litigation on terms that are (a) fair, reasonable, and in the best interest of their estates, and (b) falls squarely within the sound exercise of the Debtors' business judgment, and therefore should be approved.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

24. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

25. Nothing in this Motion: (a) is intended or shall be deemed to constitute an admission as to the validity of any claim against the Debtors or their estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates under the Settlement Agreement; or (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party.

## NOTICE

26. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) U.S. Trustee; (b) the United States Attorney's Office for the Southern District of Texas; (c) the state attorneys general for all states in which the Debtors conduct business; (d) the Internal Revenue Service; (e) the holders of the thirty largest unsecured claims against the Debtors on a consolidated basis; (f) counsel to the 1L AHG; (g) the First Lien Agent; (h) counsel to the 2L AHG; (i) the Second Lien Agent; (j) counsel to the Notes AHG; (k) the Senior Notes Indenture Trustee; (l) counsels to the Sponsors; (m) the Texas Comptroller of Public Accounts; (n) the Texas Secretary of State; (o) the Office of the Illinois Attorney General; (p) the Illinois Department of Labor; and (q) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that this Court enter the Proposed Order, substantially in the form annexed hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: December 6, 2024
Houston, Texas

**PORTER HEDGES LLP**

*/s/ John F. Higgins*
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Jack M. Eiband (TX Bar No. 24135185)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 228-1331
Email: jhiggins@porterhedges.com
sjohnson@porterhedges.com
jeiband@porterhedges.com

**ROPES & GRAY LLP**
Ryan Preston Dahl (admitted *pro hac vice*)
Matthew M. Roose (admitted *pro hac vice*)
Natasha S. Hwangpo (admitted *pro hac vice*)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
E-mail: ryan.dahl@ropesgray.com
matthew.roose@ropesgray.com
natasha.hwangpo@ropesgray.com

—and—

Stephen L. Iacovo (admitted *pro hac vice*)
191 North Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Telephone: (312) 845-1200
Facsimile: (312) 845-5500
E-mail: stephen.iacovo@ropesgray.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**CERTIFICATE OF SERVICE**

I certify that on December 6, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *John F. Higgins*
John F. Higgins