# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| H-Food Holdings, LLC, *et al.*,[1] | Case No. 24-90586 (ARP) |
| Debtors. | (Jointly Administered) |

**STATEMENT AND RESERVATION OF RIGHTS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE PROPOSED DISCLOSURE STATEMENT, (II) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS' JOINT CHAPTER 11 PLAN, (III) APPROVING THE FORM OF BALLOTS, (IV) APPROVING THE EQUITY RIGHTS OFFERING PROCEDURES AND RELATED MATERIALS, (V) SCHEDULING A PLAN CONFIRMATION HEARING, (VI) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF THE PROPOSED PLAN, AND (VII) <u>GRANTING RELATED RELIEF</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the chapter 11 bankruptcy cases (the "<u>Chapter 11 Cases</u>") of the above-captioned debtors in possession (collectively, the "<u>Debtors</u>"), by and through its undersigned proposed counsel, hereby submits this statement and reservation of rights (the "<u>Statement</u>") regarding the Debtors' motion [ECF No. 189] (the "<u>Motion</u>") for approval of the proposed amended disclosure statement [ECF No. 324] (as may be subsequently amended, the "<u>Disclosure Statement</u>") and solicitation procedures (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: H-Food Holdings, LLC (6072); HFS Sub, LLC (8177); HFS Matterhorn Topco, Inc. (0765); Matterhorn Parent, LLC (4445); Matterhorn Intermediate, LLC (1574); Matterhorn Buyer, LLC (0335); Hearthside USA – Corporate, Inc. (3174); Hearthside Holdco, LLC (6206); Hearthside Finance Company, Inc. (8294); Hearthside Food Solutions, LLC (8653); Interbake Foods, LLC (7640); Ryt-way Midco, LLC (4388); Peacock Engineering Company II, LLC (N/A); Hearthside USA, LLC (7655); Hearthside USA – CPG Partners, LLC (2282); Oak State Products, LLC (1822); Standard Functional Foods Group, LLC (4160); Quality Bakery Products, LLC (0528); Toll Packaging Services LLC (5955); Ryt-way Industries, LLC (0783); Matterhorn Sub, LLC (N/A); Peacock Foods LLC (N/A); and Hearthside USA – Produce & Foodservice, LLC (0783). The Debtors' service address is 3333 Finley Road, Suite 800, Downers Grove, IL 60515.

"Solicitation Procedures") for the Debtors' *Amended Joint Chapter 11 Plan of Reorganization of H-Food Holdings, LLC and its Affiliated Debtors* [ECF No. 323] (as may be subsequently amended, the "Plan").[2]  In support of this Statement, the Committee respectfully states as follows:

## STATEMENT

1. Since its formation, the Committee has engaged in an investigation of potential estate claims and causes of action against the various parties slated to receive releases under the Plan, including the Debtors' prepetition secured parties and the Debtors' current and former directors and officers.  This investigation is essential to fulfilling the Committee's fiduciary duties and must be completed to allow the Committee to evaluate the fairness of the Plan's proposed releases.  Concurrently, the Committee has begun to assess the validity and enforceability of liens on, and security interests in, the Debtors' assets.  Because both efforts remain ongoing, the Committee is not yet in a position to make a recommendation to unsecured creditors regarding the possibility of additional available assets which can increase or otherwise improve recoveries by creditors—particularly in light of several problematic provisions in the Plan.

2. Thus far, the Committee has worked constructively with the Debtors to address a number of issues related to the adequacy of the disclosures set forth in the Disclosure Statement. As a result of the Committee's efforts, the Committee has been advised that the Debtors intend to file a second amended disclosure statement addressing many of the Committee's disclosure concerns.  The Committee reserves the right to raise any additional disclosure-related issues that are not remedied or otherwise arise in the forthcoming second amended disclosure statement.  No

---

[2] Capitalized terms not defined herein shall have the meanings set forth in the Plan, Disclosure Statement, or Motion, as applicable.

amount of additional disclosure can overcome the Committee's fundamental concerns with the Plan, the most notable of which are described herein.

3. First, the Plan, as currently proposed, includes provisions intended to pressure unsecured creditors into voting in favor of the Plan and punish creditors for pursuing their statutory right to vote to reject the Plan. The Plan contains a "deathtrap" for unsecured creditors, which would strip unsecured creditors of any recovery under the Plan if their class votes to reject the Plan. The deathtrap serves no legitimate business purpose and is simply intended to coerce the favorable votes of unsecured creditors.

4. Separately, if unsecured creditors vote in favor of the Plan, their recoveries will be *reduced* if the aggregate fees of the Committee's professionals exceed $13 million. *See id*. Such a highly unusual provision, regardless of the dollar figure attached to it, is an overt attempt by the Debtors to handcuff the Committee in its efforts to exercise its fiduciary duties and force unsecured creditors to accept the currently proposed treatment. Such a provision sets a dangerous precedent.

5. Second, general unsecured creditors currently have no way to assess whether their proposed treatment under the Plan is fair and equitable, or whether they will receive a recovery at all. Even assuming the two classes of general unsecured creditors vote in favor of the plan (and therefore each avoid the deathtrap), they are slated to receive: (i) $21 million among Holders of Senior Unsecured Notes in Class 5; and (ii) the lesser of $2.4 million or 6.0% among Holders of General Unsecured Claims in Class 6.[3] Plan at Art. III.B.5–6. However, unresolved liabilities—such as those arising from ongoing investigations[4] or other contingent claims—could dilute the

---

[3] The Committee notes the differences in proposed recoveries between Class 5 Senior Unsecured Noteholders and Class 6 General Unsecured Creditors and emphasizes the importance of ensuring that the treatment of both classes is fair, consistent with the principles of equitable distribution, and does not unfairly discriminate as between holders of similarly situated claims.

[4] For example, the Committee understands certain governmental investigations remain ongoing in connection with allegations of certain labor law violations. Because governmental entities are not required to file proofs of claim

already limited recovery for unsecured creditors in Class 6, making it impossible for Holders of General Unsecured Claims to predict whether they will receive a 6% recovery, or potentially far less.

6. Third, the Plan provides broad releases to the Released Parties which include the Debtors' prepetition lenders and current and former directors and officers, among a myriad of related parties. *See* Plan Art. I.A.133. The Committee is concerned that these releases grant substantial protections to numerous parties, including insiders, while offering minimal recovery to unsecured creditors.

7. The broad proposed releases of the Released Parties and the *de minimis* (or $0) proposed distribution to unsecured creditors are particularly troubling considering the Committee's ongoing investigation into the below areas of interest (among others), each of which could not be pursued if the Plan's releases are approved:

- a. **<u>Alleged Labor Law Violations.</u>** On February 25, 2023, *The New York Times* published an article raising concerns about labor issues allegedly tied to third-party staffing agencies used by the Debtors. *Id.* at ¶ 39. This article spurred investigations by certain governmental agencies, including the Illinois Attorney General's Office and the Illinois Department of Labor, into potential labor law violations. *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Settlement Agreement by and Among the Office of the Illinois Attorney General, Illinois Department of Labor, and Hearthside Food Solutions, LLC and (III) Granting Related Relief* at ¶ 7. The Committee is actively investigating potential claims and causes of action against the Debtors' current and former directors and officers and the Debtors' third-party staffing agencies in connection with these alleged violations.

    Furthermore, despite the Debtors' assertions that any claims arising from the ongoing investigations will not result in material liabilities, the Committee has no way to independently verify these statements and cannot do so until the passing of the May 21, 2025 governmental bar date, well after the Debtors' proposed Voting Deadline and anticipated entry of a Confirmation Order. *See*

---

in this case until May 21, 2025, general unsecured creditors will be asked to vote without an opportunity to understand (i) the potential amount of any claims resulting from the ongoing investigations, (ii) whether such claims will fall solely in the unsecured creditors class, and (iii) whether such claims will impact the Effective Date.

-4-

> *Declaration of Robert M. Caruso, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [ECF No. 30] (the "First Day Declaration") ¶ 40; *Order (I) Establishing (A) Bar Dates and (B) Related Procedures for Filing Proofs of Claim, (II) Approving the Form and Manner of Notice Thereof and (III) Granting Related Relief* [ECF No. 208] (the "Bar Date Order"). Any claims arising from any outstanding government investigations could materially dilute the already-limited recovery available to general unsecured creditors under the Plan.

    b. **The Sale-Leaseback Transactions.** Between 2022 and 2024, the Debtors closed several sale-leaseback transactions, which resulted in the Debtors being party to a series of capital leases under which the Debtors owe, in the aggregate, more than $304 million. *See* First Day Decl. at ¶¶ 6, 19. The Committee is investing whether any claims or causes of action exist against any insiders, including the Debtors' directors, officers, and equity sponsors, that were involved in or authorized such transactions.

    c. **The Divestment of Non-Core Assets.** In the first quarter of 2024, the Debtors continued to divest certain non-core assets. *Id.* at ¶ 45. The Committee is investigating these sale transactions to determine whether adequate consideration was received for the assets sold and tracing these sale proceeds.

8. In addition, the Committee is investigating the Debtors' 2023 sale of its European nutritional functional bars business (the "European Asset Sale") and the subsequent July 2024 repatriation of approximately $187.9 million of cash proceeds from the European Asset Sale from ROS B.V., the Company's (as defined in the First Day Declaration) Dutch unrestricted subsidiary to Hearthside Sub, LLC, which was not an obligor or guarantor on the Debtors' prepetition debt. First Day Decl. ¶ 45. These cash proceeds (the "Unencumbered Cash") were transferred into the Debtors' main operating account on or about the Petition Date, in connection with the Restructuring Support Agreement "for the benefit of the estates." *Id.* at 50. As of the Petition Date, the Debtors reported approximately $212.9 million in cash on hand, the majority of which remains unencumbered as the Debtors bank accounts are not subject to deposit account control agreements in favor of the collateral agents for the First Lien Term Loan or the Second Lien Term Loan. *Id.* at ¶¶ 9, 24, 27. The Committee continues to assess any potential causes of action that may exist, including avoidance actions and claims against the Debtors' directors and officers that

approved the European Asset Sale and subsequent repatriation of sale proceeds. The Committee is also examining whether the Unencumbered Cash should be used for the benefit of unsecured creditors. In addition to the Unencumbered Cash, the Committee's lien investigation has revealed that there may be additional potentially unencumbered assets that could inure to the benefit of unsecured creditors.

9. Although the Debtors' Special Committee was allegedly delegated the investigative authority and tasked with investigating affiliate transactions and potential claims and causes of action against directors and officers, the Committee has not been provided with any findings of the Special Committee and understands that the investigation remains ongoing, despite the inclusion of broad sweeping releases of the Debtors' current and former directors and officers, and equity sponsors set forth in the Plan. The Committee, in furtherance of its fiduciary duty, is conducting its own investigation into whether there are any viable claims against any of the Released Parties.[5] *Critically, the Committee's investigation remains ongoing*, and the Committee has not yet formed its view on the treatment of general unsecured creditors, or the Releases proposed under the Plan. Creditors deserve to make an *informed* decision regarding their vote on the Plan and cannot be fully educated on the merits of the Plan until the Committee has completed

---

[5] On December 13, 2024, the Committee served informal document requests on the Debtors and the Special Committee, requesting the substantial completion of document production by January 10, 2025. The Committee subsequently met and conferred with counsel for the Debtors and the Special Committee regarding the document productions. To date, the Committee received only 367 documents in the aggregate from the Debtors. While the Committee has received approximately 4,876 documents from the Special Committee, the Committee has not received any documents relating to the findings of the Special Committee's investigation. The Committee has likewise not received responsive documents to many of its document requests, and virtually no communications have been produced despite the Committee's requests for the production of certain communications.

its investigation. Simply put, completion of the Committee's investigation is critically important to assessing the treatment of general unsecured creditors and the Releases set forth in the Plan.

10. In addition to the above concerns, the Committee also takes issue with several other provisions of the Plan, including:

a. In addition to the Creditors' Committee collectively, the individual committee members, acting in their capacities as such, must be included as Exculpated Parties to protect them from liability arising from the exercise of their fiduciary duties.

b. The definition of Released Parties also requires revision to ensure fairness. Entities or individuals who file confirmation objections—whether formal or informal—should not automatically be excluded as Released Parties if they have otherwise not opted out of the releases as such a provision coerces creditors into not filing or transmitting any objections to confirmation of the Plan. Similarly, creditors who vote to accept the Plan and do not opt out of the releases should be included as Released Parties.

c. Finally, the Plan permits the Reorganized Debtors to retain avoidance actions and other non-released causes of action. Avoidance actions should not be pursued against unsecured creditors, particularly those already receiving minimal or no distribution under the Plan. Retaining such claims only increases the burden on creditors who are already facing limited recoveries.

11. The Committee will continue to work with the Debtors and their other stakeholders to complete its investigation and hopes to resolve each of its concerns ahead of Plan confirmation. Until then, the Committee requests the Court's approval to include a letter to unsecured creditors in the Solicitation Package, attached hereto as **Exhibit A** (the "Committee Letter"), which recommends that unsecured creditors wait for a final recommendation from the Committee before casting a vote in favor or against the Plan. The Committee intends to file a summary report on the Court's docket after the conclusion of its investigation on or about February 24, 2025 (assuming the Debtors and Special Committee continue to cooperate with the Committee's investigation

efforts), advising unsecured creditors of the results of its investigation and its recommendation on Plan voting.

12. Including the Committee Letter in the Debtors' Solicitation Package is consistent with the Bankruptcy Code's expectation that a committee will "advise those represented by such committee of such committee's determinations as to any plan formulated." 11 U.S.C. § 1103(c)(3). Consistent with this provision, this Court has authorized committees to include such letters in solicitation materials. *See, e.g.*, *In re DRF Logistics, LLC*, No. 24-90447 (CML), [ECF No. 276] (Bankr. S.D. Tex. Sept. 24, 2024); *In re Benefytt Techs., Inc.*, No. 23-90566 (CML), [ECF No. 330] (Bankr. S.D. Tex. July 25, 2023) (directing that the solicitation package include a solicitation letter from the Committee). The Committee previewed the Committee Letter with the Debtors, who had no objection to the letter's inclusion.

13. The Committee respectfully requests that the Court authorize the Debtors to (i) include the Committee Letter in the Solicitation Package in a manner that ensures that it is visible and easily accessible to voting parties and (ii) post a copy of the Committee Letter and any update(s) thereto on the case website hosted by the Debtors' claims agent at https://cases.ra.kroll.com/HFS (the "Case Website"). Specifically, with respect to inclusion in the Solicitation Package, the Committee requests that the letter be printed on light blue paper (or a color different than the other materials in the Solicitation Package) and immediately follow the Cover Letter in the Solicitation Package. The Committee hopes to engage in further discussions

with the Debtors regarding the Plan and, to the extent the Committee's views on the Plan change, the Committee will update its recommendation on the Case Website.

## RESERVATION OF RIGHTS

14. The Committee reserves all rights to amend or supplement this Statement as additional information comes to the attention of the Committee during the discovery process. To the extent the Committee, any Committee member, or unsecured creditors generally are impacted in any way by the contents of any supplements or amendments to the Disclosure Statement or the Plan that may be filed after any Disclosure Statement or Plan confirmation objection deadline, the Committee reserves its right to object thereto. The Committee also reserves all of its rights to object to confirmation of the Plan, including, but not limited to, approval of the releases and approval of any transaction on any grounds. The Committee reserves the right to add new arguments, supplement existing arguments, and request additional relief, each as necessitated by new facts that the Committee may uncover prior to or at the hearing on the Motion and adequacy of the Disclosure Statement.

## CONCLUSION

15. WHEREFORE, for the foregoing reasons, the Committee respectfully requests that the Court (i) condition approval of the Disclosure Statement on the inclusion of the letter attached hereto as **Exhibit A** in the Solicitation Package, and (ii) order such other and further relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: January 17, 2025

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

*/s/ Charles R. Gibbs*
Charles R. Gibbs
Texas State Bar No. 7846300
Grayson Williams (admitted *pro hac vice*)
Texas State Bar No. 24124561
845 Texas Avenue, Suite 4000
Houston, TX 77002-1656
Telephone: (713) 653-1700
Facsimile: (713) 739-7592
Email: crgibbs@mwe.com
      gwilliams@mwe.com

-and-

**LOWENSTEIN SANDLER LLP**

Jeffrey L. Cohen (admitted *pro hac vice*)
David M. Posner (admitted *pro hac vice*)
Bruce S. Nathan
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email:  jcohen@lowenstein.com
      dposner@lowenstein.com
      bnathan@lowenstein.com

-and-

Michael A. Kaplan (admitted *pro hac vice*)
Colleen M. Restel
One Lowenstein Drive
Roseland, NJ 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400
E-mail: mkaplan@lowenstein.com
      crestel@lowenstein.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**Certificate of Service**

      I certify that, on January 17, 2025, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                            */s/ Charles R. Gibbs*
                                              Charles R. Gibbs