The Official Committee of Unsecured Creditors of
*In re H-Food Holdings, LLC, et al.*
c/o Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, New York 10020

February 26, 2025

To: All Holders of Senior Unsecured Notes Claims and General Unsecured Claims Against H-Food Holdings, LLC, *et al.*

Re: Creditors' Committee Investigation and Voting Recommendation in *In re H-Food Holdings, LLC, et al.*, No. 24-90586 (ARP) (Bankr. S.D. Tex.)

Dear Holders of Senior Unsecured Notes Claims and General Unsecured Claims:

The Official Committee of Unsecured Creditors (the "Committee") of H-Food Holdings, LLC, *et al.* (the "Debtors" or the "Company") writes this letter to all holders of Senior Unsecured Notes Claims[1] and General Unsecured Claims against the Debtors (collectively, the "Unsecured Creditors") regarding their decision on whether to vote in favor of the *Second Amended Joint Chapter 11 Plan of Reorganization of H-Food Holdings, LLC and its Affiliated Debtors* [ECF No. 388] (as may be amended, supplemented, restated, or modified from time to time, the "Plan") proposed by the Debtors.

The Committee is pleased to announce that the parties have reached a resolution in principle of all issues related to the Plan, subject to documentation. As part of the agreed revisions, the Committee has successfully negotiated, among other things, an increase in the recovery for Class 6 Holders of General Unsecured Claims, raising the cash pool from $2.4 million to $5.5 million, to be distributed pro rata among other allowed unsecured claims. Accordingly, the Committee **recommends that you VOTE TO ACCEPT the Plan**.

**If you received a ballot to vote on the Plan, please note that the deadline to vote to accept or reject the Plan is March 3, 2025, at 4:00 p.m. (Central Time)** (the "Voting Deadline"). Unsecured Creditors can cast their vote on the Plan by completing and submitting the voting ballot prior to the Voting Deadline. The ballot includes detailed instructions for its completion and submission.[2]

## I. The Chapter 11 Cases

On November 22, 2024 (the "Petition Date"), the Debtors commenced the chapter 11 cases (the "Chapter 11 Cases") by each filing a voluntary petition for relief under title 11 of the United

---

[1] Capitalized terms used in this letter but not defined have the meanings given to them in the Committee's solicitation letter or the Plan (defined herein), as applicable.

[2] All Court filings, including the ballot, may be accessed free of charge at the following link: https://cases.ra.kroll.com/HFS/Home-Index.

-1-

States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

On December 4, 2024, the Committee was appointed by the Office of the United States Trustee for the Southern District of Texas pursuant to section 1102(a)(1) of the Bankruptcy Code. The Committee, as a fiduciary, has a duty to maximize unsecured creditor recoveries. The Committee is essentially representing the interests of all unsecured creditors in these Chapter 11 Cases. The Committee is represented by the following professionals: Lowenstein Sandler LLP and McDermott Will & Emery LLP as counsel; and Berkeley Research Group, LLC as financial advisor.

Almost immediately after its formation and engagement of professionals, the Committee took proactive steps in negotiating the Plan to ensure that the interests of Unsecured Creditors were fully considered and protected. Among other things, these value-maximizing efforts included: (a) negotiating a more cost-effective and less burdensome debtor-in-possession financing facility, reducing the expense and impact on creditor recoveries; (b) investigating potential claims and causes of action held by the Debtors, including those against lenders, insiders, and other parties; and (c) ensuring that the Debtors maximized the allocation of funds to critical vendors to preserve business relationships and operational continuity.

## II. The Committee's Investigation

The Committee has undertaken several investigations to maximize recoveries for Unsecured Creditors. Specifically, the Committee has investigated, among other things: (a) potential estate claims and causes of action against the parties slated to receive releases under the Plan; (b) the extent of the pre- and post-petition investigation conducted by the Officer Special Committee of Matterhorn Buyer, LLC (the "Special Committee"), which is comprised of the Debtors' two independent directors; (c) whether certain assets of the estates are unencumbered and available for distribution to Unsecured Creditors; and (d) whether the prepetition secured parties' liens are avoidable.

To date, the Committee's professionals have received and reviewed document productions from the (a) Debtors totaling over 500 documents, and (b) Special Committee totaling over 12,800 documents. In addition to reviewing thousands of documents, the Committee deposed several current and former representatives from the Debtors listed below.

| **DEPONENT** | **DEPOSITION DATE** |
|---|---|
| Richard Scalise (Former Chief Executive Officer and Current Manager) | February 12, 2025 |
| Robert Caruso (Current Chief Restructuring Officer) | February 19, 2025 |

| | |
|---|---|
| Bobbi Jo Raffetto (Current Senior Vice President & Chief Operating Officer) | February 20, 2025 |
| Carol Flaton (Special Committee Officer and Current Director) | February 21, 2025 |

While most of the deponents lacked detailed knowledge or awareness of the matters under the Committee's investigation, the deponents were able to provide insight on historical conduct that, along with the document review conducted, provided sufficient information for the Committee to reach its conclusion. In particular, the Committee sought to understand the business justification surrounding various acquisitions and divestitures, the parties to those transactions, and the flow of funds therefrom. Certain executive employment decisions surrounding changes to senior management were scrutinized and reasonable explanations for the changes were provided. Indeed, the only area in which information was not as forthright as the Committee had hoped was in relation to the allegations underlying alleged labor law violations. Both the Special Committee, which partially investigated this topic, and the Company asserted various privileges over information related to this topic. It is unlikely that a challenge to those privilege assertions would be successful, and, in any event, even further unlikely to reveal information that would lead to the discovery of estate causes of action, as both the Committee and Special Committee found no information that even suggested the Company was aware of the alleged violations.

Moreover, the deposition of Ms. Flaton, one of two independent directors, demonstrated that the Special Committee implemented a process that enabled it to work largely independently, and that the Special Committee's professionals conducted a thorough analysis of potential estate causes of action. Importantly, rather than simply wait for the professionals to complete their work, the Special Committee held regular meetings with their professionals, providing guidance and direction along the way. Ultimately, the information learned from the Committee's depositions and review of documents substantiated the Special Committee's findings outlined in the Disclosure Statement. Based on its investigation to date, the Committee has concluded that there are no claims or causes of action worth pursuing when considering the costs of, and risks associated with, litigation.

**III.    Overview of the Unsecured Creditors' Settlement and Key Plan Provisions**

        **A.    Economic Framework of the Unsecured Creditors' Settlement**

Because of these efforts and continued dialogue with the Debtors and certain stakeholders, the Committee was able to reach a resolution in principle, subject to documentation, of all Plan issues that maximizes the recovery for all Unsecured Creditors. The core economic terms of the contemplated settlement (the "Settlement") are as follows:

- **General Unsecured Claims (Class 6):** Under the Settlement terms, recoveries for Holders of Allowed General Unsecured Claims have been increased to $5.5 million. The "death trap" provision—*i.e.*, the removal of any distribution to Holders of

Allowed General Unsecured Claims if Class 6 votes to reject the Plan—has been eliminated.

- **Waiver of Avoidance Actions Against Trade Vendors:** The Debtors have agreed to waive all Avoidance Actions (as defined in the Plan) against all non-insiders, providing certainty and protection for Unsecured Creditors that may have otherwise been subject to clawback litigation.

- **Appointment of a General Unsecured Claims Representative:** A General Unsecured Claims Representative will be appointed with consultation rights and standing to object to the classification and allowance of certain claims in Class 6. Certain savings from the Committee's professional fee budget will be allocated for the General Unsecured Claims Representative's role, funded by the Reorganized Debtors.

### B.   Other Plan Provisions Impacting Unsecured Creditor Recoveries

The Plan provides for releases by third parties (the "Third-Party Releases") of any and all claims that could have been asserted against, among others, certain lenders, agents, and trustees, and current and former directors and officers in connection with the Debtors' estates, the Chapter 11 Cases, and the transactions or events giving rise to any claim that is treated in the Plan. The Third-Party Releases will bind creditors unless they take affirmative action to opt out by submitting an opt-out form, formal objection, or email objection before Plan confirmation.

The Plan separately provides for a release of all current and former directors, managers, officers, employees and managing agents of the Debtors by all current and former employees, full-time workers, part-time workers, temporary workers, or workers placed by third-party staffing agencies (each, an "Employee") unless such Employee expressly elects in writing to opt-out of the releases (via timely (1) submitting an opt-out form, (2) filing a formal objection on the docket of the Chapter 11 Cases, or (3) providing an informal objection to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, before confirmation) from all claims and causes of action arising out of or relating to the employment of the Employee by the Debtors, including any claims arising under the Fair Labor Standards Act of 1938 or any related or similar federal or state wage and labor laws.

### IV.   The Committee's Recommendation

The Settlement meaningfully increases recoveries to general unsecured creditors in Class 6. Absent a settlement, the Committee intended to object to the Plan and initiate an adversary proceeding against the Prepetition First Lien Secured Parties to challenge the status of potentially unencumbered assets—specifically, assets upon which no lien has been granted or where a lien may not have been properly perfected for the benefit of the Prepetition First Lien Secured Parties. As part of this litigation strategy, the Committee would have continued to pursue discovery, including depositions (some of which have already taken place), and present witness and expert testimony at trial to support its claims. The hearing on confirmation of the Plan, as well as the adversary proceeding, would have been heavily contested resulting in significant legal fees being incurred by the Debtors' estates. Moreover, if the Committee's objections were successful, the

Plan would not be confirmed, leading to further delays and increased legal expenses. The Settlement eliminates these costly delays and risks, which would most likely diminish and postpone creditor recoveries.

For creditors to receive the aforementioned distributions as quickly as possible, the Plan must be confirmed. The Plan, as to be modified by the Settlement, achieves this objective by providing a structured and efficient resolution that maximizes recoveries while avoiding protracted litigation. The Committee fully supports the Settlement because it believes that its consummation will provide the highest possible recoveries to Unsecured Creditors in the most timely, efficient, and effective manner. Failure to confirm the Plan introduces the risk of additional delays and a significant reduction in creditor recoveries—an outcome the Committee does not support.

For the foregoing reasons, the Committee, urges you to vote to accept the Plan. As a reminder, the deadline to vote on whether to accept or reject the Plan is **March 3, 2025, at 4:00 p.m. (Central Time).** We strongly encourage you to read this letter in its entirety so you can make an informed decision when considering how to vote.

### V. How can I Contact the Committee's Legal Counsel?

If you have any questions regarding the Plan, the voting procedures, or the Chapter 11 Cases generally, please contact counsel to the Committee:

**Lowenstein Sandler LLP**
Jeffrey Cohen: (212) 262-6700
jcohen@lowenstein.com
David M. Posner: (212) 262-6700
dposner@lowenstein.com
Colleen M. Restel: (973) 597-2500
crestel@lowenstein.com
Kelly E. Moynihan: (212) 262-6700
kmoynihan@lowenstein.com

This letter does not purport to reflect the views of the Bankruptcy Court and does not constitute findings of fact or conclusions of law endorsed by the Bankruptcy Court, nor does it necessarily reflect the views of any individual Committee member, each of which reserves any and all of its rights. This communication does not constitute, and shall not be construed as, a solicitation by any individual member of the Committee. This letter is not intended or offered as legal advice as to any specific claim or the treatment of any claim under the Plan. It has been prepared for informational purposes only and you should carefully review the terms of the Plan and the Disclosure Statement and consult your own legal advisor. Furthermore, the description of the Plan, related documents, and related deadlines contained herein is qualified in its entirety by the Plan, Disclosure Statement, Restructuring Support Agreement, and all exhibits and documents related thereto.

The Committee does not represent individual holders of any particular claims and cannot advise unsecured creditors regarding the impact of the Plan on direct claims or causes of action, if any, an individual unsecured creditor may have against any of the Debtors' officers or directors or

other third parties receiving the benefit of exculpation and releases under the Plan. To the extent you believe you may own any such potential claims, please contact your own individual counsel to assess whether acceptance of the Plan is in your best interests.

                        Very truly yours,

                        **The Official Committee of Unsecured Creditors of H-Food Holdings, LLC,** *et al.*